710 So.2d 597 (1998)
PENN AMERICA INSURANCE COMPANY, Appellant,
v.
FLORIDA POWER & LIGHT COMPANY, Appellee.
No. 96-4142.
District Court of Appeal of Florida, Fourth District.
March 18, 1998.
Rehearing, Rehearing, and Certification of Question Denied May 22, 1998.
*598 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, and John J. Bulfin of Wiederhold, Moses, Bulfin & Rubin, P.A., West Palm Beach, for appellant.
Bard D. Rockenbach and Daniel M. Bachi of Sellars, Supran, Cole, Marion & Bachi, P.A., West Palm Beach, for appellee.
Rehearing, Rehearing En Banc, and Certification of Question Denied May 22, 1998.
PER CURIAM.
Appellant, Penn America Insurance Company ("Penn America"), appeals from a final summary judgment entered in favor of Appellee, Florida Power & Light ("FPL"). Since we find that the first issue raised by Penn America warrants reversal, we do not address the remaining issues raised on appeal.
This is the second appearance of this case before this Court. In the prior appeal, this Court reversed a summary final judgment in favor of Penn America and held that FPL was an "additional insured" under Penn America's excess insurance policy. Florida Power & Light Co. v. Penn America Ins. Co., 654 So.2d 276, 279 (Fla. 4th DCA 1995). The pertinent facts, which were summarized in the prior opinion, are as follows.
Michael Haywood, an employee of Eastern Utility Construction, Inc. ("Eastern"), was seriously injured when he came into contact with an energized feeder bay conductor located at an FPL substation. Id. at 277. Eastern was an independent contractor who had entered into a Purchase Order Contract with FPL to renovate certain electrical substations. Pursuant to the contract, Eastern was required to procure and maintain insurance coverage. Accordingly, Eastern obtained a $500,000 comprehensive general liability insurance policy with Transamerica Insurance Company ("Transamerica") and a $1,000,000 excess insurance policy with Penn America.
On the day of the accident, the entire Eastern crew was working at an FPL substation when Haywood was shocked by an electric current and rendered a quadriplegic. Id. Thereafter, Haywood sued FPL for personal injuries sustained from the accident. Subsequently, Haywood settled his case against FPL for $2,000,000. Id. Transamerica tendered its general liability policy limits of $500,000. Penn America, however, brought a declaratory action against FPL to determine whether FPL was covered under the insurance policy between it and Eastern. The trial court found that FPL was not covered under the policy. However, on appeal, this Court held that FPL was an "additional insured" under the policy. Specifically, this Court stated:
This case is reversed and remanded with directions to the trial court to enter a summary judgment in favor of FPL finding them an additional insured under the insurance policy. Thereafter, the trial court may hold further proceedings consistent with this opinion to resolve any additional issues raised by the parties regarding coverage.
Id. at 279.
Upon remand, the parties filed cross-motions for summary judgment. The trial court granted FPL's motion for summary judgment, finding that Penn America was obligated to provide FPL with $1,000,000 under the excess insurance policy.
On appeal, Penn America argues that the finding that its excess insurance policy affords $1,000,000 in coverage to FPL conflicts with the plain language of the purchase order contract between FPL and Eastern and the excess insurance policy between itself and Eastern, in which FPL was found to be an "additional insured." We agree.
The pertinent provision of the excess insurance policy between Penn America and Eastern, in which FPL was found to be an "additional insured," provides:
(2) Each of the following is an insured under this policy to the extent set forth below:
(a) any person, organization, trustee or estate to whom or to which the Named Insured is obligated by virtue of a written contract or permit to provide insurance such as is afforded by the terms of this policy, but only with respect to operations by or on behalf of the Named Insured or to faculties of or used by the Named Insured and then only to the extent of the coverage required by such *599 contract and for the limits of liability specified in such contract, but in no event for insurance not afforded by this policy nor for limits of liability in excess of the applicable limits of liability of this policy.
(Emphasis added.)
The pertinent provision of the purchase order contract between FPL and Eastern provides:
10. Work on FPL's Premises
Where installation services or other work must be performed on FPL premises by the VENDOR [Eastern], whether or not referenced in the scope of the Purchase Order, certification of insurance may be requested to satisfy FPL that insurance coverage is in effect, including coverage for, but not limited to the following indemnity and insurance provisions:

INDEMNITY AGREEMENT
VENDOR agrees to perform the work whether or not described in this order, as an independent contractor and not as a subcontractor, agent or employee of Florida Power & Light Company or any of the subsidiaries. FPL retains no control or discretion over the Vendor and its employees or over the detail, manner or methods of the performance of the work by Vendor or its employees, and Vendor, upon acceptance of this purchase order, agrees to protect, defend and hold FPL, its subsidiaries, officers, directors and employees, hereafter referred to as the Company, free and unharmed against any liabilities whatsoever, whether or not due to or caused by negligence of the Company, resulting in connection with performance of the work by Vendor, its employees or subcontractors. Vendor's said obligation to protect, defend and hold the Company free and unharmed against any such liabilities shall extend up to, but shall not exceed the sum of $300,000.00 for injuries to or death of person(s) arising out of a single occurrence and $25,000.00 for damage to property arising out of a single occurrence.
VENDOR PROVIDED INSURANCE REQUIREMENTS
Before commencing work, the Vendor shall procure and maintain at its own expense until final completion and acceptance of the work, the following minimum insurance in forms and with insurance companies acceptable to FPL.
A. Workers' Compensation insurance for statutory obligations imposed by Workers' Compensation of Occupational Disease Laws, including, where applicable, the United States Longshoremen's and Harbor Workers' Act, the Federal Employees Liability Act and the Jones Act. Employer's Liability Insurance shall be provided with a minimum limit of $100,000 per accident.
B. Comprehensive Automobile Liability Insurance with the following minimum limits of liability.
Bodily Injury Liability $300,000 Each Occurrence
Property Damage Liability $25,000 Each Occurrence
C. General Liability, Contractual Liability and Products Completed Operations Liability Insurance covering all operations required to complete the work, including coverage for damage caused by explosion, collapse or structural injury and damage to underground utilities with the following minimum limits of liability:
Bodily Injury Liability $300,000 Each Occurrence
Property Damage Liability $25,000 Each Occurrence
The Products/Completed Operations Liability Insurance shall be provided for a period of at least one year after completion of the work.
The Contractual Liability Insurance coverage shall insure the performance of the contractual obligations asserted by the Vendor by acceptance of this order, including specifically, but without limitation thereto, the mentioned indemnity agreement included herein.
BEFORE COMMENCING WORK ON THIS AUTHORIZATION, the Vendor must be in receipt of certification from the FPL Representative that insurance coverages have been approved by FPL. It is understood and agreed that the Vendor is *600 not covered by any owner provided insurance program.
(Emphasis added.)
In finding that coverage under Penn America's excess insurance policy was not limited to $300,000, the trial court cited two separate reasons. First, it found that the issue of whether the purchase order contract triggered coverage was foreclosed by this Court's prior opinion finding that FPL was an "insured" under Penn America's excess insurance policy. The trial court found that all issues regarding section 2(a) of Penn America's excess insurance policy were considered and resolved by this Court in the prior opinion.
Second, the trial court found that even if this issue had not been foreclosed, Penn America's coverage was not limited to $300,000 because paragraph 10 of the purchase order contract between Eastern and FPL provided that Eastern maintain a minimum limit of $300,000 for bodily injury liability. It believed that the "Indemnity Agreement" and the "Insurance Requirements" sections under paragraph 10 were separate and distinct sections and that the purchase order contract did not provide for a maximum limit of coverage for bodily injury liability.
We find that the trial court's reasoning and conclusions are erroneous. First, this issue had not been foreclosed to review by the prior appeal. The sole issue determined by this Court in the prior appeal was whether FPL was an "additional insured" under the excess insurance policy between Eastern and Penn America. See id. at 277-79.
Second, we find that the plain language of the purchase order contract limits FPL's coverage to $300,000 in this case. In the prior appeal, this Court determined that FPL was an "additional insured" based upon section 2(a) of the excess insurance policy between Penn America and Eastern. See id. at 278-79. Section 2(a) provides that the "additional insured" is covered "to the extent of the coverage required by such contract [i.e., the purchase order contract between FPL and Eastern] and for the limits of liability specified in such contract." Thus, it is clear from this section of the insurance policy that FPL, as an additional insured, is covered to the extent required by the purchase order contract between it and Eastern.
The construction of the terms of an unambiguous contract is a question of law for the trial court. See Florida Min. & Materials Corp. v. Standard Gypsum Corp., 550 So.2d 47, 49(Fla. 2d DCA 1989). As such, an appellate court is on equal footing with the trial court as interpreter of the written document. Id. In the absence of ambiguity, the parties' intent must be discerned from the four corners of the document. See Florida Power & Light Co., 654 So.2d at 277-78. Here, we find that the trial court incorrectly determined that the "Indemnity Agreement" and the "Insurance Requirements" were separate and distinct sections under paragraph 10 of the purchase order contract.
We view the "Insurance Requirements" section as coming under and being a part of the "Indemnity Agreement" section. Paragraph 10 of the purchase order contract only provided that Eastern be able to indemnify FPL, even where FPL's negligence was the sole cause of the injury, for any liability up to but not exceeding $300,000 for each occurrence of bodily injury. To ensure that Eastern would be able to indemnify FPL up to $300,000 for each occurrence of bodily injury, paragraph 10 set forth that Eastern was to maintain minimum limits of general liability insurance in the amount of $300,000 for each occurrence of bodily injury. Thus, as this Court is on equal footing with the trial court as interpreter of the written document, we conclude that the purchase order contract only requires that Eastern have sufficient insurance to indemnify FPL up to a maximum of $300,000 for each occurrence of bodily injury.
Since section 2(a) of the excess insurance policy between Penn America and Eastern provided that FPL was covered to the extent required by the purchase order contract, we find that FPL is entitled to receive $300,000. However, since the primary insurance provider (Transamerica) already paid FPL $500,000 for this incident, we conclude that Penn America, the supplemental insurance provider, does not owe anything to FPL, as *601 an "additional insured," under its excess insurance policy with Eastern. Accordingly, we reverse the trial court's order granting FPL's motion for final summary judgment and remand for the trial court to enter summary judgment in favor of Penn America.
REVERSED AND REMANDED.
GUNTHER and SHAHOOD, JJ., and RAMIREZ, JUAN, Jr., Associate Judge, concur.